Filed 4/22/22  P. v. Delacruz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>GUSTAVO DELACRUZ,<br><br>     Defendant and Appellant. | F082583<br><br>(Kern Super. Ct. No. BF151443A)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Peña, Acting P. J., Smith, J. and De Santos, J.

## INTRODUCTION

In 2016, appellant Gustavo Delacruz was convicted of second degree murder for causing a fatal collision while driving under the influence of alcohol and narcotics. He had prior convictions for driving under the influence and had been warned that he could be charged and convicted of second degree murder if he again drove under the influence and caused a death. After his conviction in this case, he was sentenced to 15 years to life.

In 2021, Delacruz filed a petition for resentencing pursuant to Penal Code[1] section 1170.95, and alleged he was not the actual killer, and his murder conviction was based on the felony-murder rule and/or the natural and probable consequences doctrine. The superior court denied the petition.

On appeal, his appellate counsel has filed a brief which summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) We affirm.

## FACTS[2]

At approximately 4:19 a.m. on October 17, 2013, a collision occurred on Comanche Drive, north of Breckenridge Road, in Kern County, involving Taylor Embree, who was driving a 2010 gray Chevrolet truck, and Delacruz, who was driving a 1998 Ford Explorer.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] In response to Delacruz's petition, the People filed opposition, with this court's prior opinion that affirmed his convictions as a supporting exhibit. Delacruz filed a reply to the opposition but did not object to the People's reliance on this court's opinion. Given this background, we take judicial notice of the appellate record and this court's nonpublished opinion in *People v. Delacruz* (Feb. 19, 2019, F073639) for the factual background in this case. (Evid. Code, § 450, § 452, subd. (d), § 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

We recite these facts to provide context for the court's ruling and the parties' arguments. As will be explained below, we do not rely on this factual summary in resolving the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

2.

Officer Evans of the California Highway Patrol arrived at the scene around 4:40 a.m. or 4:45 a.m. Emergency personnel were already there. As a result of the collision, the cab portion of Embree's truck had detached from the chassis and the bed. Embree was still in the driver's seat of his truck, wearing his seat belt, and pronounced dead at the scene.

Delacruz's Ford Explorer was on its roof and against an embankment. There were several beer cans in and around the vehicle, along with an 18-pack box for Coors Light beer. Officer Evans contacted Delacruz after he was placed into an ambulance. Evans smelled a very strong odor of an alcoholic beverage inside the ambulance. Delacruz's eyes were red and watery, there was a strong alcoholic odor from his breath, his eyes were red, bloodshot, and watery, and he had slurred speech. Delacruz was taken to the hospital.

About an hour and a half later, Officer Evans contacted Delacruz at the hospital. Evans conducted the horizontal gaze and vertical gaze nystagmus field sobriety tests, concluded Delacruz was under the influence of alcohol at the time of the collision, and arrested him for driving under the influence and vehicular manslaughter.

At 6:45 a.m., about two hours after the collision, a sample of Delacruz's blood was collected at the hospital. He tested positive for methamphetamine and amphetamine. His blood-alcohol level was 0.10 percent.

There was no evidence that Embree was under the influence of alcohol or narcotics, and his wife testified he had never used such substances in his life.

A few days after the accident, Officer Evans returned to the hospital to question Delacruz. Delacruz said he had left his home around 11:00 p.m. in his Ford Explorer and had gone to Breckenridge Road. He had two Coors Light beers before leaving. Delacruz explained that he liked " 'to go up there because it overlooks the city and he likes to sometimes get away and think about things.' " He had been feeling " 'unhappy,' " and when he feels that way he " 'likes to "pop a few." ' " He left the area of Breckenridge

3.

Road between approximately 2:00 a.m. and 3:00 a.m. He was not sure which direction he went after leaving Breckenridge Road. (*People v. Delacruz*, *supra*, F073639, at p. 14.)

Officer Michael Bright of California Highway Patrol was a traffic reconstruction specialist assigned to the central division Multidisciplinary Accident Investigation Team (MAIT), and the lead investigator into the fatal collision.

Officer Bright testified that at the moment of impact, Delacruz's Ford was traveling approximately 85 miles per hour, and Embree's Chevrolet was traveling approximately 37 miles per hour. The speed limit was 55 miles per hour.

The data recorder for Embree's vehicle showed that five seconds before the crash, he was going 62 miles an hour, and slowed down and applied his breaks before the crash. Delacruz's Ford was not equipped with a data recorder, but there was no evidence he slowed down or applied his brakes before the collision.

Officer Bright testified the accident reconstruction investigation determined " 'the primary cause of the collision was Mr. [Delacruz] driving under the influence,' " and " 'the associated collision factor was his moving his vehicle to the left side of the solid and broken yellow line.' " (*People v. Delacruz*, *supra*, F073639, at p. 7.) Bright explained how he reached his opinion that Delacruz had moved his vehicle into Embree's lane, thereby causing the accident:

> " 'We looked at the orientation of the vehicles at impact.
>
> " 'Mr. [Delacruz's] vehicle was generally oriented in line with the center line of the road. His vehicle was straddling the road at impact and his vehicle was oriented in line with the center line of the road.
>
> " 'Mr. Embree's vehicle was straddling the center line of the road, but his vehicle was oblique. The oblique position of Mr. Embree's vehicle was indicative of an evasive maneuver. That, coupled with the brake application that he did from two and a half seconds leading up to the crash all the way through impact, was all indicative of Mr. Embree trying to avoid something.

4.

" 'Mr. [Delacruz's] vehicle oriented straight down the middle of the road, no indication of braking on the part of Mr. [Delacruz]. Couple that with the roadway configuration. In the [northbound] direction of travel of Mr. [Delacruz], Mr. [Delacruz] is facing a right-hand curve in the road. Any failure to follow the road on his part would make his vehicle tend to drift to the left into the opposing lane. [¶] Mr. Embree's vehicle, in the [southbound] direction that he's proceeding, he's in a left-hand curve. If there was a failure to negotiate the turn on his part, his vehicle would have drifted off to the right, off to the right shoulder, not into the opposing lane. [¶] Everything put together indicated to us that Mr. Embree's movement over the center line was an avoidance maneuver. Mr. [Delacruz's] position over the center line was either intentional or negligent.' " (*Id.* at pp. 7–8.)

Officer Bright testified that an evasive move on Delacruz's part was improbable because just before impact, Delacruz's vehicle was " 'basically in line with the center line of the road,' " and that position " 'doesn't tend to indicate turning to avoid something.' " (*People v. Delacruz, supra*, F073639, at p. 9.)

At trial, the court took judicial notice of Delacruz's prior convictions under Vehicle Code section 23152, subdivision (a) for driving under the influence (DUI) in 2007 and 2012. In both prior cases, he pleaded guilty, and he was advised by the court that being under the influence of alcohol or drugs, or both, impairs a person's ability to safely operate a motor vehicle; it is extremely dangerous to human life to drive while under the influence of alcohol and/or drugs; and were he to continue to drive under the influence of alcohol or drugs, or both, and as a result thereof someone was killed, he could be charged with murder. In both prior cases, Delacruz signed a "Defendant Acknowledgment of Advisal Pursuant to Vehicle Code Section 23593(a)" form and his driver's license was suspended. Delacruz was required to enroll in DUI school and take the Victim Impact Panel class in connection with his 2007 conviction, and completed the program as ordered.

On November 21, 2014, an information was filed in the Superior Court of Kern County charging Delacruz with count 1, second degree murder with malice aforethought (§ 187, subd. (a)); count 2, gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)); and count 3, misdemeanor driving on a suspended license (Veh. Code, § 14601.2, subd. (a)).

**Jury Instructions**

The jury was instructed with CALCRIM No. 520, second degree murder, and express and implied malice, and that the People had to prove "defendant committed an act that caused the death of another person" and when defendant acted, he had the state of mind called malice aforethought. CALCRIM No. 620, causation, stated that if defendant's act was a substantial factor causing the victim's death, then defendant was legally responsible for the death even though the victim or another person may have failed to use reasonable care, and if the jury had a reasonable doubt whether defendant's act caused the death, it could not find him guilty. CALCRIM No. 590 defined count 2, gross vehicular manslaughter while intoxicated, and stated the elements that defendant drove while under the influence, committed an infraction with gross negligence, and his grossly negligent conduct caused the death of another person.

The jury was not given any instructions on accomplices, aiders and abettors, or felony murder.

**Conviction and Sentence**

On March 15, 2016, after a jury trial, Delacruz was convicted as charged in counts 1, 2, and 3.

On April 28, 2016, the court sentenced Delacruz to 15 years to life on count 1,

---

[3] The following procedural background is from this court's nonpublished opinion and the appellate records from his first appeal, *People v. Delacruz*, *supra*, F073639). (§ 1170.95, subd. (d)(3).)

second degree murder; stayed the upper term of 10 years imposed for count 2; and imposed a concurrent term for count 3. The court advised Delacruz that, pursuant to Vehicle Code section 23593, if he continued to drive while under the influence of alcohol or drugs or both, and someone was killed as a result of that driving, he would be charged with murder.

**Delacruz's Direct Appeal**

On February 19, 2019, this court affirmed Delacruz's conviction and sentence. We rejected his arguments the testimony from the experts violated his Sixth Amendment right to confront and cross-examine witnesses. (*People v. Delacruz*, *supra*, F073639.)

<u>**SENATE BILL NOS. 1437 & 775**</u>

The instant appeal is from the denial of Delacruz's petition for resentencing of his murder conviction, filed pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess. (Senate Bill 1437)).

Senate Bill 1437 became effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person *who is not the actual killer*, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959, italics added (*Lewis*).)

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)[4]

---

[4] As amended, section 189, subdivision (f) states an exception that allows "individuals to be convicted of felony murder even if they did not act with malice and do not fall in one of the three categories of section 189, subdivision (e), where the victim is a peace officer engaged in the course of his or her duties and the defendant knows (or

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with section 1170.95, subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not … previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.]

reasonably should know) these facts." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 99.)

8.

'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra*, 11 Cal.5th at p. 957.) " 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' " (*Id*. at p. 963, italics added in original.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis, supra*, 11 Cal.5th at p. 968.)

*Lewis* further held that after appointing counsel, the trial court may rely on the record of conviction to determine whether the prima facie showing has been made in order "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment

regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Id*. at p. 971.)

" 'However, if the record, *including the court's own documents*, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971, italics added.)

"Appellate opinions … are generally considered to be part of the record of conviction. [Citation.] However, as we cautioned in [*People v. Woodell* (1998) 17 Cal.4th 448, 457], the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra*, 11 Cal.5th at p. 972.)

"[T]here is no categorical bar to consulting the record of conviction at the prima facie stage." (*Lewis, supra*, 11 Cal.5th at p. 972, fn. 6.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Id.* at p. 972, fn. omitted.)

The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 966.)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818, if the court failed to appoint counsel or violated the petitioner's statutory rights under section 1170.95, and the petitioner must "therefore 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.' " (*Lewis, supra*, 11 Cal.5th at p. 974.)

Therefore, to demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing.  (*Lewis, supra*, 11 Cal.5th at pp. 972–974; see *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022.  (2020–2021 Reg. Sess.; Stats. 2021, ch. 551, § 1 (Senate Bill 775).)  As a result of the amendments, section 1170.95 clarified that a "person convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime*, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances.  (§ 1170.95, subd. (a), italics added.)

The amendments also codified the holding in *Lewis* that "[u]pon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner."  (§ 1170.95, subd. (b)(3).)  After the petition is filed, the People shall file a response and the petitioner may serve a reply.  (*Id*. at subd. (c).)

After the parties have the opportunity to submit briefs, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).)  If the petitioner makes the prima facie showing, "the court shall issue an order to show cause."  (*Ibid*.)  If the court declines to issue an order to show cause, "it shall provide a statement fully setting forth its reasons for doing so."  (*Ibid*.)

If an order to show cause is issued, "the court shall hold a hearing to determine" whether to vacate the petitioner's conviction, recall the sentence, and resentence petitioner.  (§ 1170.95, subd. (d)(1).)  At the hearing, the prosecution has the burden to

prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).)

"At the hearing to determine whether the petitioner is entitled to relief … [t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court *may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion.* However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022, italics added.)

### DELACRUZ'S PETITION

On February 19, 2021, Delacruz filed a petition in the superior court, in pro. per., for resentencing pursuant to section 1170.95, and requested appointment of counsel.

The petition was supported by Delacruz's declaration, signed under penalty of perjury, where he checked boxes on a preprinted form that stated he was entitled to resentencing under section 1170.95 because a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he could not now be convicted of first or second degree murder under the amended versions to sections 188 and 189; and he was convicted of second degree murder under the natural and probable consequences doctrine or under the second

12.

degree felony-murder doctrine and could not now be so convicted under the changes to section 188.

On February 26, 2021, the court appointed counsel to represent Delacruz. The People moved for a summary denial because Delacruz was convicted of second degree murder for driving under the influence under *People v. Watson* (1981) 30 Cal.3d 290. The court denied the People's motion.

**The People's Opposition**

On March 9, 2021, the People filed opposition, with this court's prior opinion as a supporting exhibit, and cited the facts as stated in that opinion. The People argued that Delacruz was charged and convicted of second degree murder based on an implied malice theory under *Watson*. He was not eligible for relief under section 1170.95 because he was the actual killer, and he was not convicted under the felony-murder rule or the natural and probable consequences doctrine.

**Delacruz's Response**

On March 15, 2021, Delacruz, represented by counsel, filed a response to the People's opposition, and submitted the matter on the declaration in Delacruz's petition that he was not the actual killer.

**The Court's Denial of the Petition**

On March 29, 2021, the court held a hearing on the petition, and denied it because Delacruz "was the driver in a DUI crash that ended up in murder." On the same day, Delacruz filed a notice of appeal.

**DISCUSSION**

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on June 17, 2021, we invited appellant to submit additional briefing. To date, he has not done so.

As required by *Lewis* and the amended version of section 1170.95, the court appointed counsel to represent Delacruz, received additional briefing from the parties, held a hearing on the matter, and gave reasons for not issuing an order to show cause – that Delacruz was the driver who caused the fatal collision and thus the actual killer.

To the extent the court made any inappropriate factual findings from this court's opinion that affirmed Delacruz's conviction, any statutory error is not prejudicial because he was ineligible for resentencing as a matter of law. (*Lewis, supra*, 11 Cal.5th at pp. 972–974.)

*Watson* held that malice may be implied when a person willfully drives under the influence of alcohol. (*People v. Watson, supra*, 30 Cal.3d at p. 294.) A finding of implied malice for second degree murder in a DUI case "depends upon a determination that the defendant *actually appreciated* the risk involved." (*Id.* at pp. 296–297.)

The court may rely on jury instructions, which are part of the record of conviction, to make the prima facie determination because the instructions "given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, disapproved on another ground in *Lewis, supra*, 11 Cal.5th 952.)

In this case, the procedural history and instructions show Delacruz was charged and convicted as the sole perpetrator based on an implied malice theory of second degree murder, and the jury was not instructed about accomplices, aiding and abetting, or felony murder. (See, e.g., *People v. Roldan* (2020) 56 Cal.App.5th 997, 1004 [second degree implied malice murder under *Watson* is distinct from the natural and probable consequences doctrine and survives the passage of Senate Bill 1437], petition for review dismissed, overruled on other grounds by *Lewis, supra*, 11 Cal.5th 952.) To the extent the jury was instructed on the natural and probable consequences doctrine, Senate Bill

14.

1437 "removed the natural and probable consequences doctrine as a basis for a murder conviction only insofar as it applied to aider and abettor liability…. In contrast to this vicarious liability, under which the mens rea of an aider and abettor towards the killing is irrelevant, the doctrine of implied malice requires that the perpetrator actually appreciate that death is the natural and probable consequence of his or her actions, and further requires that the perpetrator consciously disregard that danger. [Citations.] Senate Bill 1437 did nothing to remove implied malice as a basis for a second degree murder conviction." (*People v. Roldan, supra*, 56 Cal.App.5th at pp. 1004–1005.)

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.